FILED
2026 Sep-21 PM 12:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **DIANE LEWIS-MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **5:25-cv-1587-EGL** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| ***Commissioner of*** | ) | |
| ***Social Security*****,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION & ORDER**

Diane Lewis-Moore seeks judicial review of the Commissioner of Social Security's denial of her application for a period of disability and disability insurance benefits. After careful review of the administrative record, the parties' briefs, and the magistrate judge's report and recommendation, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

### A. Procedural Background

On July 29, 2021, Lewis-Moore filed an application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2021. Doc. 10-3 at 11. The Social Security Administration denied the claim on December 9, 2022, and again on reconsideration on October 27, 2023. *Id.* Lewis-Moore requested

a hearing, which an ALJ held by telephone on April 25, 2024. *Id.* The ALJ denied her claim on July 12, 2024. *Id.* at 26.

The Appeals Council denied review on July 25, 2025, and the ALJ's decision became the Commissioner's final decision on that date. *Id.* at 2-4. Lewis-Moore then initiated this action on September 16, 2025. Doc. 1. After the parties briefed the appeal, Docs. 17-19, the magistrate judge recommended reversal and remand on August 19, 2026, Doc. 20 at 17. The case was then reassigned to the undersigned.

**B. Factual Background**

Lewis-Moore was born on December 11, 1971, and was 52 years old on June 30, 2024, her date last insured. Doc. 10-3 at 25-26. She has at least a high school education and past relevant work as a home attendant. *Id.* at 25. She alleged that she became disabled on March 1, 2021, because of high blood pressure, high cholesterol, acute depression, lumbar spondylolysis, lumbar radiculopathy, shortness of breath, degenerative spinal stenosis, chronic back pain, degenerative disc disease, and sciatica. *See* Doc. 10-8 at 5.

## ALJ DECISION

Disability determinations follow a five-step sequential evaluation. The ALJ considers whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment meeting or equaling a listed impairment; (4) can perform any past relevant work; and, if not,

(5) can adjust to other work existing in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step one, the ALJ found that Lewis-Moore had not engaged in substantial gainful activity between her alleged onset date of March 1, 2021, and her date last insured of June 30, 2024. Doc. 10-3 at 13. At step two, the ALJ found three severe impairments: degenerative disc disease of the lumbar spine, anxiety disorder, and depressive/bipolar disorder. *Id.* The ALJ also found the following non-severe impairments: hypertension, hyperlipidemia, asthma, left shoulder impingement and acromioclavicular degenerative joint disease, left carpal tunnel syndrome, and obesity. *Id.* at 14-15.

At step three, the ALJ found that no impairment, alone or in combination, met or medically equaled a listed impairment. *Id.* at 15-18. Applying the paragraph B criteria, the ALJ found moderate limitations in understanding, remembering, or applying information and in interacting with others, and mild limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself. *Id.*

The ALJ then assessed Lewis-Moore's residual functional capacity (RFC) and found that she could perform light work as defined in 20 C.F.R. § 404.1567(b), except that she:

> can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk with normal breaks for 6 hours in an 8-hour

> workday and sit with normal breaks for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. She can occasionally balance on even terrain. She can occasionally stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to vibrations. She cannot work around unguarded machinery and unprotected heights. She can understand, remember, and carry out simple, 1 to 3 step instructions and tasks. She can have occasional interaction with co-workers, supervisors, and the general public.

*Id.* at 18-19.

At step four, the ALJ found that Lewis-Moore could not perform her past relevant work and proceeded to step five. *Id.* at 25. Relying on the vocational expert's testimony, the ALJ found that Lewis-Moore could perform other work existing in significant numbers in the national economy, such as sorter, tagger, and hand bander, each unskilled and light. *Id.* at 25-26, 54. The ALJ then concluded that Lewis-Moore was not disabled from March 1, 2021, through June 30, 2024. *Id.* at 26.

**STANDARD OF REVIEW**

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

Whatever the meaning of "substantial" in other contexts, the threshold here "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Winschel*, 631 F.3d at 1178. The Court must affirm if that standard is met, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted).

## DISCUSSION

Lewis-Moore seeks reversal on two grounds: that the ALJ failed to reconcile the RFC with prior administrative medical findings she found persuasive, Doc. 17 at 6-14; and that the ALJ adopted an internally inconsistent RFC by limiting her to light work while restricting her to occasional balancing on even terrain, *id.* at 14-19. The Court addresses each argument in turn.

### I. Evaluation of Medical Opinions & Findings

For claims filed after March 27, 2017, an ALJ does not defer to or assign specific evidentiary weight to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). Findings by state agency psychological consultants are prior administrative medical findings, *see id.* § 404.1513a(b)(1), and the ALJ must articulate how persuasive she finds them, addressing supportability and consistency, *id.* § 404.1520c(b)(2). Separately, where the ALJ's RFC determination conflicts with a medical opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see*

*Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, at *2 (11th Cir. Nov. 20, 2023).

Drs. Guendalina Ravello and Catherine Nunez each completed a Mental Residual Functional Capacity assessment in two parts. The first part asks the consultant to rate discrete work-related abilities on a scale that includes "Not Significantly Limited" and "Moderately Limited." Doc. 10-4 at 10, 23. The second part directs the consultant to "[e]xplain in narrative form" the social-interaction capacities and limitations reflected in those ratings. *Id.* at 11, 23. "[T]he actual mental residual functional capacity assessment is recorded in the narrative discussion[], which describes how the evidence supports each conclusion." *Id.* at 10, 23.

Under the "Social Interaction Limitation" heading, Dr. Ravello rated Lewis-Moore moderately limited in the ability to interact appropriately with the general public, in the ability to accept instructions and respond appropriately to criticism from supervisors, and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at 10. She found no significant limitation in the ability to ask simple questions or request assistance or in the ability to maintain socially appropriate behavior, and no limitations in understanding and memory, sustained concentration, and persistence, or adaptation. *Id.* at 10-11. Her narrative explanation reads in full: "Contact with the public and

coworkers should be casual. Feedback should be supportive, tactful and non-confrontational to prevent unnecessary stress." *Id.* at 11. Dr. Nunez adopted the same ratings and the same narrative on reconsideration, adding that Lewis-Moore's mental impairment "does not appear to be of disabling proportions" and that she "is capable of performing simple routine and repetitive tasks." *Id.* at 23-24.

The ALJ found Dr. Ravello's findings "only somewhat persuasive because [they are] only consistent with some of the evidence," and Dr. Nunez's "mostly persuasive." Doc. 10-3 at 24. She indicated that Dr. Ravello's finding that Lewis-Moore had a social-interaction limitation was "consistent with the record showing some complaints of depression and objective findings noting some instances of being tearful, anxious/depressed mood, and being visibly restless during the interview with Dr. Blanton." *Id.* She nevertheless noted that the narrative aspects of the evaluation included "vague language such as 'casual' as well as 'supportive, tactful and non-confrontational.'" *See id.* She further noted that the consultants had not imposed a limitation restricting Lewis-Moore to simple, one-to-three-step instructions and tasks. *Id.*

That explanation is sufficient to support the ALJ's RFC determination. The ALJ identified the portion of each consultant's assessment she accepted, the evidence supporting it, the portion she rejected, and her reason for rejecting it. *See id*. She then translated Lewis-Moore's social limitations into the RFC by restricting

her to occasional interaction with coworkers, supervisors, and the general public. *Id.* at 19.

Lewis-Moore's main objection is that this restriction "restricts the *frequency* of contact" but "does not address the *type of contact* whatsoever." Doc. 17 at 10 (emphasis original). She suggests that the ALJ should have limited her to "superficial contact," barred tandem work, or allowed only incidental contact with coworkers. *Id.* at 10 n.2.

Lewis-Moore does not explain what the consultants' terms would mean in vocational practice, why "casual" contact is equivalent to "superficial" contact, or how a vocational expert would apply either phrase to an occupation in the Dictionary of Occupational Titles. The ALJ's objection to the narrative aspects of their opinions as "vague" raises this exact problem, and an ALJ need not adopt a limitation that cannot be expressed in terms a vocational expert can evaluate. *Cf. Crawford*, 363 F.3d at 1161.

Indeed, the Eleventh Circuit has dealt with this precise issue in *Hand v. Social Security Administration, Commissioner*, 786 F. App'x 220, 225 (11th Cir. 2019). There, "[t]he ALJ explained that she gave some, but not great weight to Dr. Estock's mental RFC assessment, as he included multiple recommendations that were not phrased in vocationally relevant terms," such as by noting that the claimant "would benefit from a flexible schedule, supportive feedback, casual supervision, and non-

confrontational criticism." *Id.* Like the ALJ here, the ALJ in *Hand* explained that "these were not factors that could 'realistically be covered by the ALJ or vocational expert in the context of a disability hearing,'" and the Eleventh Circuit "s[aw] no error in this regard." *Id.* Neither do I.

The narrative aspect of their evaluations has a further problem. Both consultants wrote that contact "should" be casual and that feedback "should" be supportive, tactful, and non-confrontational "to prevent unnecessary stress." Doc. 10-4 at 11, 23. Framed that way, these appear to be recommendations about a preferable work environment rather than statements about what Lewis-Moore can still do despite her impairments, and so they do not squarely fit the regulatory definition of a medical opinion. *See* 20 C.F.R. § 404.1513(a)(2) ("[A] medical opinion is a statement … about what you can still do despite your impairment(s)."). A consultant's observation that a claimant would benefit from an accommodation does not compel the ALJ to impose it as a vocational restriction. *See Daywalt v. Kijakazi*, No. 1:20-cv-277, 2021 WL 3679304, at *8 (M.D.N.C. Aug. 19, 2021) ("A *recommendation* that a patient undertake certain ameliorative measures does not equate to a physical *restriction* or a judgment about what Plaintiff can still do despite her impairments."). Avoiding unnecessary stress would benefit most workers. It says little about whether this worker can function without the extra stress.

The magistrate judge reasoned that a limitation on the frequency of interaction is not a one-for-one substitute for a limitation on accepting instructions and responding to criticism, because even infrequent interactions may involve instructions or criticism. Doc. 20 at 11. That is true as far as it goes, but it does not identify a conflict the ALJ left unexplained. The ALJ never found that Lewis-Moore was unable to accept instructions or respond to criticism; she found only a moderate limitation in interacting with others, which means she retains at least "fair" functioning in that area. *See* 20 C.F.R. t. 404, subpt. P, app. 1, § 12.00F(2)(c). And the decision, read as a whole, explains at length why the ALJ concluded that a moderate limitation required no greater restriction than occasional interaction: Lewis-Moore reported that she gets along "good/very well" with authority figures; that she has no problems getting along with family, friends, or neighbors; and that she had never been fired or laid off because of trouble getting along with others. Doc. 10-3 at 16. She shops in stores, goes to dinner with others, and attends medical appointments regularly. *Id.* The record contains no formal or consistent mental health treatment from a mental health professional, examiners generally described her as cooperative, and other records noted normal mood and affect. *Id.* The ALJ expressly stated that the RFC "reflects the degree of limitation" found in that analysis. *Id.* at 18. Again, read as a whole, the decision identifies the evidence that led the ALJ to impose the restriction she did and no more. *See Petrey v. Comm'r of*

*Soc. Sec.*, No. 1:20-cv-02028, 2022 WL 4545186, at *2 (N.D. Ohio Sept. 29, 2022) ("Although the ALJ did not re-state the language previously discussing Dr. Darr's pulmonary evaluation in the same paragraph where the ALJ determined that the doctor's opined lifting restriction lacked support, that does not mean the ALJ failed to provide an adequate explanation for her decision.").

Lewis-Moore is also wrong that the ALJ accounted only for "the *frequency* of contact," and not "the *type of contact*" as well. Doc. 17 at 10. The ALJ limited Lewis-Moore not only to "occasional interaction[s]" with others, but also to "understand[ing], remember[ing], and carry[ing] out *simple*, 1 to 3 step instructions and tasks." Doc. 10-3 at 19 (emphasis added). That latter limitation "addressed the quality of [her] social interactions." *Nathan v. Bisignano*, No. 25-cv-3662, 2026 WL 2665615, at *3 (D. Minn. Sept. 10, 2026); *see also Cupp v. Bisignano*, No. 25-cv-1113, 2026 WL 2517158, at *6 (E.D. Wis. Aug. 26, 2026) ("It would seem that a job involving 'simple tasks' and only occasional interaction with others would necessarily involve only superficial interactions.").

It is also worth keeping in view what the ALJ did with these findings. She adopted the consultants' social-interaction limitation findings, and, in the areas of understanding, memory, and concentration, imposed a restriction the consultants had found unnecessary. The RFC is therefore more restrictive than the prior administrative medical findings in at least one respect, and coextensive with them in

another. What remains is thus a disagreement about how a moderate rating on a form should be rendered in vocational terms, which fundamentally is a question about the weight given to various aspects of the evidence, a question committed to the ALJ's discretion. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Because the ALJ clearly articulated her reasons for departing from the consultants' narrative and supported the restriction she imposed with evidence from the record, the requirements of SSR 96-8p are satisfied, and reversal is not warranted on this ground.

**II. RFC Consistency**

Lewis-Moore next argues that, because a claimant who can balance only occasionally cannot stand or walk for six hours or frequently lift ten pounds, the ALJ's finding that Lewis-Moore can balance only occasionally therefore contradicts her finding that Lewis-Moore had the capacity to perform light work. Doc. 17 at 14-19. From that premise she argues that her capacity falls between the sedentary and light exertional levels, that POMS DI 25025.015(D) required the ALJ to explain why she did not choose the lower-numbered rule, and that Rule 201.14 of the Medical-Vocational Guidelines would then have directed a finding of disability. *Id.* at 16-18.

The premise does not hold. Balancing is a postural function, and postural limitations are nonexertional. 20 C.F.R. § 404.1569a(c)(1)(vi); SSR 85-15, 1985 WL 56857, at *6-7 (Jan. 1, 1985). The exertional findings in this RFC match the full

exertional demands of light work. *See* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983) (the full range of light work requires standing or walking for approximately six hours of an eight-hour workday). Lewis-Moore's exertional capacity therefore does not fall between two levels. Her position is therefore that a nonexertional restriction should be treated as though it categorically conflicts with her exertional capacity. But that is not necessarily the case: limitations in climbing and balancing "can have varying effects on the occupational base, depending on the degree of limitation and the type of job." SSR 85-15, 1985 WL 56857, at *6. Accordingly, "multiple District Court cases have upheld decisions where the ALJ limited the claimant to light work with occasional balancing; light work and occasional balancing are not inherently contradictory." *Mort v. Comm'r of Soc. Sec. Admin.*, No. 4:20-cv-00032, 2021 WL 372537, at *2 (E.D. Ark. Feb. 3, 2021).

Even assuming, however, that the balancing restriction affects Lewis-Moore's occupational base, the way to measure that is through vocational expert testimony. *Phillips v. Barnhart*, 357 F.3d 1232, 1242-43 (11th Cir. 2004). For that testimony to constitute substantial evidence, the ALJ's hypothetical question must include all of the claimant's impairments. *Winschel*, 631 F.3d at 1180.

The magistrate judge concluded that the ALJ "could have asked the VE whether the potential conflict between the exertional requirements of light work and

the limited balancing restriction would impact the availability of the jobs the VE identified," and that, if the VE "testified that there was minimal or no impact," the VE's testimony would provide substantial evidence supporting the ALJ's conclusion. Doc. 20 at 15. That is all true, and the ALJ *did* ask that question. Her first hypothetical described an individual who could lift twenty pounds occasionally and ten pounds frequently, stand or walk for six hours with normal breaks, sit for six hours with normal breaks, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and "occasionally balance on even terrain." Doc. 10-3 at 53-54. The vocational expert testified that such an individual could work as a sorter, a tagger, and a hand bander, and gave national job numbers for each occupation. *Id.* She then confirmed that her testimony was consistent with the Dictionary of Occupational Titles. *Id.* at 56.

Lewis-Moore identifies no evidence that any of those three occupations requires more than occasional balancing. The contention that a more searching inquiry would have produced a different result is thus speculation. Because the vocational expert's testimony accounted for the balancing restriction, it supplies substantial evidence for the step-five finding, and the grid rule Lewis-Moore invokes was never triggered.

## CONCLUSION

Substantial evidence supports the ALJ's evaluation of the prior administrative medical findings and her RFC determination, and the ALJ applied the correct legal standards. The Court therefore **DECLINES** to adopt the magistrate judge's report and recommendation (Doc. 20) and **AFFIRMS** the Commissioner's decision. Final judgment will be entered separately.

**DONE** and **ORDERED** this 21st day of September, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE